UNIVERSAL COACH, INC. et al., Appellants,

v.

NEW YORK CITY TRANSIT AUTHORITY, INC. et al., Appellees.

[Cite as *Universal Coach, Inc. v. New York City Transit Auth., Inc.* (1993), 90 Ohio App.3d 284.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63590.

Decided Sept. 13, 1993.

*Nicholas M. DeVito,* for appellants.

*Baker & Hostetler, H. Stephen Madsen, Wayne C. Dabb* and *R. Timothy Coerdt,* for appellee.

*Squire, Sanders & Dempsey, Eric M. Oakley* and *Jill G. Okun,* for appellees Flxible Corporation and General Automobile Corporation.

*Schuyler, Roche & Zwirner, Michael B. Roche* and *L. Andrew Brehm; Porter & Wright* and *Hugh E. McKay,* for appellee Blitz Corporation.

*Jones, Day, Reavis & Pogue* and *Robert P. Ducatman,* for appellee New Jersey Transit.

---

ANN MCMANAMON, Judge.

Universal Coach, Inc. and Udelsohn Equipment Company, Inc., timely appeal from a judgment of the Cuyahoga County Court of Common Pleas which granted summary judgment on behalf of New York City Transit Authority, Inc. ("NYC-TA"), Flxible Corp. ("FLX"), General Automotive Corp. ("GAC"), Blitz Corp. and New Jersey Transit ("NJT"), pursuant to Civ.R. 56.

Our review compels modification in part and reversal in part.

In January 1985, NYCTA announced its intention to sell eight hundred thirty used Grumman buses and spare parts through a limited advertisement program in *The New York Times, The Wall Street Journal, City Record, City Sun, American Metal Market, Iron Age* and *Passenger Transport.* In the fall of 1985, Universal contacted NYCTA to express an interest in purchasing the buses and a series of negotiations ensued. During the process, Universal and Udelsohn formed a joint venture for the purpose of the purchase, remanufacture and resale of the buses.

A year later, Universal, Udelsohn and NYCTA entered into a purchase agreement for the sale. The agreement, however, provided that the transaction was conditioned upon the approval by the chairman of NYCTA, the New York State Department of Transportation, and the comptroller of the state of New York. The chairman of NYCTA refused this approval, thus preventing the proposed sale.

On June 30, 1989, Universal and Udelsohn filed a complaint in the Cuyahoga County Court of Common Pleas naming NYCTA, FLX, GAC, Blitz and NJT as defendants. The complaint principally alleged that these defendants had violated

the. Ohio Corrupt Activity Act ("RICO"), R.C. 2923.31 *et seq.*, as a result of conduct which prevented the sale of the buses to the plaintiffs. In addition, the complaint raised claims of fraud, conspiracy, tortious interference with contract and bad faith/breach of contract.

In response to the complaint, NYCTA filed a motion to dismiss and/or motion for summary judgment based upon a lack of *in personam* jurisdiction per Civ.R. 12(B)(2) and failure to state a claim upon which relief can be granted per Civ.R. 12(B)(6). The remaining defendants filed motions to. dismiss. On March 24, 1992, the trial court, after treating each motion to dismiss as a motion for summary judgment, granted summary judgment on behalf of each of the defendants.

The would-be purchasers, upon appeal, have raised two assignments of error which essentially argue that the trial court erred by granting the motions. Since the assignments of error have a common basis in law and fact, this court will consolidate them for review.[1]

We initially note that the record before this court fails to demonstrate that the trial court possessed *in personam* jurisdiction over NYCTA (Brooklyn, New York), GAC (Ann Arbor, Michigan), Blitz (Chicago, Illinois) and NJT (Newark, New Jersey). In order to invoke the *in personam* jurisdiction of the trial court over a foreign person or corporation, the plaintiff must demonstrate that (1) the nonresident person or corporation had "minimum contacts" with the forum state; and (2) out-of-state service of process does not offend traditional notions of fair play as mandated by the Fourteenth Amendment to the United States Constitution. *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. In addition, "there [must] be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus, invoking the benefits and protections of its laws." *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1295.

R.C. 2307.382, which sets forth the "minimum contacts" required in order to vest long-arm jurisdiction in a trial court over a foreign person or corporation, provides that:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

---

1. See Appendix.

"(3) Causing tortious injury by an act or omission in this state;

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(5) Causing tortious injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

"(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

"(8) Having an interest in, using, or possessing real property in this state;

"(9) Contracting to insure any person, property, or risk located within this state at the time of contracting."

In addition, Civ.R. 4.3(A), which describes the persons subject to long-arm jurisdiction and extraterritorial service of process, provides that:

"(A) When Service Permitted. Service of process may be made outside of this state, as provided herein, in any action in this state, upon a person who at the time of service of process is a nonresident of this state or is a resident of this state who is absent from this state. The term 'person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

"(3) Causing tortious injury by an act or omission in this state including but not limited to actions arising out of the ownership, operation or use of a motor vehicle or aircraft in this state;

"(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent

course of conduct or derives substantial revenue from goods used or consumed or services rendered in this state;

"(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

"(6) Having an interest in, using, or possessing real property in this state;

"(7) Contracting to insure any person, property, or risk located within this state at the time of contracting;

"(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligation arising for alimony, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state."

We fail to find the existence of any ground, pursuant to R.C. 2307.382(A) or Civ.R. 4.3(A), which conferred personal jurisdiction over NYCTA, GAC, Blitz or NJT on the trial court. Not one of these defendants conducted business within the state of Ohio which related directly or indirectly to the claims of a RICO violation, fraud, conspiracy, tortious interference with contract and bad faith/breach of contract. *Gen. Environmental Science Corp. v. Horsfall* (N.D.Ohio 1990), 753 F.Supp. 664; *Berning v. BBC, Inc.* (S.D.Ohio 1983), 575 F.Supp. 1354. In addition, that record fails to disclose that (1) the defendants took advantage of the privileges and benefits of the state of Ohio; (2) the defendants actively solicited business within the state of Ohio; (3) it was foreseeable that the defendants would litigate within the state of Ohio; and (4) it was convenient to the litigants and fairness required the defendants to come to the state of Ohio. *Sales Consultants v. Buehler Lumber Co.* (1992), 79 Ohio App.3d 289, 607 N.E.2d 94; *Erie Shore Indus., Inc. v. Cumberland Steel, Inc.* (June 7, 1990), Cuyahoga App. No. 57053, unreported, 1990 WL 75221. See, also, *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.* (1982), 8 Ohio App.3d 236, 8 OBR 309, 456 N.E.2d 1309; *Culp v. Polytechnic Inst. of New York* (1982), 7 Ohio App.3d 352, 7 OBR 451, 455 N.E.2d 698. As a result, the trial court did not possess *in personam* jurisdiction over NYCTA, GAC, Blitz and NJT and should have granted each of the defendants' individual motions to dismiss pursuant to Civ.R. 12(B)(2).

We note that FLX was subject to the jurisdiction of the trial court since its principal place of business was in Delaware, Ohio. In addition, an examination of the motion to dismiss as filed by FLX fails to disclose the inclusion of any

depositions, answers to interrogatories, written admissions, affidavits or transcripts of evidence which could have supported FLX's motion for summary judgment. It was thus not permissible for the trial court to convert the motion to dismiss into a motion for summary judgment. Cf. *Pollock v. Kanter* (1990), 68 Ohio App.3d 673, 589 N.E.2d 443; *Fraternal Order of Police v. D'Amico* (1982), 4 Ohio App.3d 15, 4 OBR 36, 446 N.E.2d 198. Nonetheless, since FLX filed a separate motion to dismiss which argued that the plaintiffs' complaint failed to state a claim upon which relief can be granted, the pleading is reviewable pursuant to Civ.R. 12(B)(6).

The Supreme Court of Ohio, in *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, established the standard of review which is to be applied to a motion to dismiss per Civ.R. 12(B)(6) and held that:

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ.R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. (*Conley v. Gibson*, 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80], followed.)" *Id.* at the syllabus.

The trial court must also construe the allegations in the complaint in a light most favorable to the plaintiff and must presume the truth of any factual allegation as contained in the complaint. *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 16 OBR 9, 474 N.E.2d 357, citing *Royce v. Smith* (1981), 68 Ohio St.2d 106, 22 O.O.3d 332, 429 N.E.2d 134; *State ex rel. Alford v. Willoughby* (1979), 58 Ohio St.2d 221, 12 O.O.3d 229, 390 N.E.2d 782. Finally, a plaintiff's pleading must state with specificity under limited circumstances each of the elements of a claim in order to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063; *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584.

As noted previously, the complaint filed by Universal and Udelsohn raised five separate claims. Of these, only the actions of a RICO violation, fraud, conspiracy, and tortious interference with contract applied to FLX. Upon application of the delineated standard of review, this court finds that the plaintiffs' complaint failed to state with the required specificity the elements of the claims of a RICO violation and fraud. The claims of conspiracy and tortious interference of contract, however, were sufficiently pleaded to withstand the granting of a motion to dismiss.

Count one of the complaint alleges that FLX, through three separate but related "fraudulent schemes," violated the Ohio Corrupt Activity Act, R.C.

2923.32 *et seq.* A review of Ohio case law fails to disclose any Ohio precedent which would clearly guide this court. The Ohio Corrupt Activity Act, however, is directly adopted from the federal Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. Section 1961 *et seq.,* Title 18, U.S. Code; *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.* (S.D.Ohio 1986), 656 F.Supp. 49. The United States Supreme Court and numerous other federal courts have examined the elements required to establish a RICO violation: (1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal criminal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired and maintained an interest in or control of an enterprise. *Sedima S.P.R.L. v. Imrex Co.* (1985), 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346. We hold that the failure of a plaintiff to plead any of the elements necessary to establish a RICO violation results in a defective complaint which cannot withstand a motion to dismiss as based upon a failure to state a claim upon which relief can be granted. Cf. *Van Dorn Co. Cent. States Can. Co. v. Howington* (N.D.Ohio 1985), 623 F.Supp. 1548.

Count one of the plaintiffs' complaint fails to disclose that the elements of a corrupt activity, a pattern of corrupt activity and the existence of an enterprise through which FLX acted were pled with specificity. In order to state a claim upon which relief can be granted and further withstand a motion to dismiss, the plaintiffs were required to plead specifically that (1) FLX was involved in some "corrupt activity" as defined by R.C. 2923.31(I) (*Palmer v. Nationwide Mut. Ins. Co.* [C.A.6, 1991], 945 F.2d 1371; *State v. Cummings* [Apr. 21, 1992], Franklin App. No. 90AP–1144, unreported, 1992 WL 82783; *State v. Wolfe* [Aug. 10, 1988], 51 Ohio App.3d 215, 555 N.E.2d 689; (2) FLX was involved in a pattern of corrupt activity which consisted of two or more incidents of corrupt activity as prohibited by R.C. 2923.31(I) (*H.J., Inc. v. Northwestern Bell Tel. Co.* [1989], 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195; *Sedima S.P.R.L. v. Imrex Co., supra* ); and (3) that an enterprise existed separate and apart from FLX through which FLX acted (*Fleischhauer v. Feltner* [C.A.6, 1989], 879 F.2d 1290; *Puckett v. Tennessee Eastman Co.* [C.A.6, 1989], 889 F.2d 1481; *Criswell v. Prod. Credit Assn.* [S.D.Ohio 1985], 660 F.Supp. 14). The failure of the plaintiffs to plead these three elements with specificity mandated that the trial court dismiss the claimed RICO violation as to FLX.

█ The plaintiffs, through count two of their complaint, allege fraudulent conduct on the part of FLX. The elements of fraud consist of the following:

" * * * (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to

whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 711.

Each of these elements must be pleaded with particularity in the complaint as required by Civ.R. 9(B). *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 531 N.E.2d 318. Count two of the complaint fails to describe with particularity that (1) FLX made a representation to the plaintiffs or owed a duty to disclose; (2) FLX made false statements; and (3) the plaintiffs relied upon statements made by FLX. The failure of the plaintiffs to plead with particularity the elements of fraud vis-a-vis FLX resulted in a defective claim which could not withstand a motion to dismiss per Civ.R. 12(B)(6). *David Carruthers Trust v. Am. Spring Wire Corp.* (Sept. 17, 1987), Cuyahoga App. No. 52627, unreported, 1987 WL 17206.

 The plaintiffs, through count three of their complaint, allege that FLX conspired with NYCTA, GAC, Blitz and NJT in order to prevent the sale of eight hundred fourteen used buses to the plaintiffs. In Ohio, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy. *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 26 O.O.2d 359, 193 N.E.2d 280. The plaintiffs were not required to plead with particularity each and every element of the claim of civil conspiracy. We find that count three adequately states a claim upon which relief could be granted. When construed in a light most favorable to the plaintiffs, count three avers a malicious combination of the defendants which involves actual malice or the existence of an unlawful act independent from the actual conspiracy. Thus, the appellants have stated a viable claim for civil conspiracy which prevents a dismissal per Civ.R. 12(B)(6). Cf. *Zuber v. Ohio Dept. of Ins.* (1986), 34 Ohio App.3d 42, 516 N.E.2d 244; *Scanlon v. Gordon F. Stofer Bros. Co.* (June 22, 1989), Cuyahoga App. No. 55467, unreported, 1989 WL 69400.

 Count four of the complaint alleges that FLX had tortiously interfered with contract negotiations between NYCTA and would be purchasers. A claim of tortious interference with a contract involves the following five elements: (1) the actual existence of a contract or negotiations with regard to a contract; (2) defendant's knowledge of the contract or negotiations; (3) the defendant's interference in the contract or negotiation; (4) the defendant's conduct was malicious and without legal justification; and (5) damages. *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 9 O.O.3d 216, 379 N.E.2d 235; *Davison Fuel & Dock Co. v. Pickands Mather & Co.* (1977), 54 Ohio App.2d 177, 8 O.O.3d 324, 376 N.E.2d 965; *Cincinnati Bengals, Inc. v. Bergery* (S.D.Ohio 1974), 453

F.Supp. 129. A review of the plaintiffs' fourth count discloses reference to each of the five elements which constitute the claim of tortious interference with a contract. As a matter of law, the plaintiffs properly delineate a claim for tortious interference of contract with regard to FLX.

Thus, FLX was entitled to a partial granting of its motion to dismiss per Civ.R. 12(B)(6), since the plaintiffs failed to state a claim, as applicable to FLX, for a RICO violation and fraud. The plaintiffs, however, did state a claim for conspiracy and tortious interference with contract *vis-a-vis* FLX.

It should also be noted that NYCTA has brought two cross-assignments of error per R.C. 2505.22 that involve the issues of *res judicata* and "choice-of-law" principles. Each of these two cross-assignments of error are mooted by our decision and thus need not be addressed. See App.R. 12(A)(1)(c).

. The plaintiffs' two assignments of error are well taken in part. The judgment of the trial court, which granted summary judgment on behalf of each defendant, is modified in part and reversed in part as follows: (1) based upon a lack of *in personam* jurisdiction, all claims raised in the plaintiff's complaint against NYCTA, GAC, Blitz and NJT are dismissed per Civ.R. 12(B)(2); (2) based upon the failure to state a claim upon which relief can be granted, the counts of RICO violation and fraud as raised in the plaintiffs' complaint against FLX are dismissed per Civ.R. 12(B)(6); and (3) the judgment of the trial court, which granted summary judgment on behalf of FLX as to the claims of conspiracy and tortious interference with contract, is reversed. The matter is remanded for further proceedings consistent with this opinion.

*Judgment modified in part,*
*reversed in part,*
*and cause remanded.*

PATTON, P.J., and NUGENT, J., concur.

ANN MCMANAMON, J., retired, of the Eighth Appellate District, sitting by assignment.